# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WISCONSIN

In re:   Yalonda Graham,                                            Case No. 16-23779-svk
                                                                         (Chapter 7)
                   Debtor.

## UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)(1) BASED ON 11 U.S.C. §§ 707(b)(2) and (3)

NOW COMES United States Trustee Patrick S. Layng, by Attorney Laura D. Steele, who hereby moves to dismiss this case under 11 U.S.C. § 707(b)(1) based on the presumption of abuse and abuse pursuant to 11 U.S.C. §§ 707(b)(2) and (3)(A) and (B). In support of this motion, the United States Trustee states:

### I. SUMMARY OF THE MOTION

1. Yalonda Graham ("Debtor") filed a voluntary Chapter 7 petition on April 20, 2016.

2. The Debtor is single with one dependent.

3. The Debtor is a teacher for Milwaukee Public Schools and reports an annual income of $107,661.84.

4. The Debtor's income is above the median income of $59,668 for a household of two.

5. The Debtor lists secured debt of $146,099, which includes judgment liens for legal services and a first mortgage on the Debtor's homestead.

6. The Debtor lists unsecured priority debt of $2,113 and unsecured debt of $368,040.

7. The Debtor's unsecured debts consist primarily of student loans.

8. The Debtor marked that there is no presumption of abuse.

9. The United States Trustee disagrees and asserts that the presumption of abuse arises in this case.

Attorney Laura D. Steele
Office of the United States Trustee
517 East Wisconsin Avenue, Suite 430
Milwaukee, WI 53202
414-297-4499 / 414-297-4478 fax

10. In addition to the presumption of abuse, there are grounds for an action under 11 U.S.C. § 707(b)(3)(A) or (B) based on the financial circumstances of the Debtor.

11. The Debtor earns sufficient income, has a history of stable employment and, if she trims her expenses, under the totality of her financial circumstances, she can afford to repay some amount to her creditors. 11 U.S.C. § 707(b)(3)(B).

12. Based on the presumption of abuse and the totality of the Debtor's financial circumstances, this case is an abuse of the Bankruptcy Code under 11 U.S.C. §§ 707(b)(2) and (3).

## II. JURISDICTION AND PROCEDURAL HISTORY

13. The Court has jurisdiction in this matter under 28 U.S.C. §§ 1334(a) and (b), 28 U.S.C. §§ 157(a) and (b)(1), and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (B).

14. The United States Trustee has standing to file a motion under 11 U.S.C. § 707(b) if it finds that the granting of relief would be an abuse of the provisions of this chapter.

15. Section 704(b)(1)(a) requires the United States Trustee to review all materials filed by a debtor and, not later than 10 days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under 11 U.S.C. § 707(b).

16. The initial Section 341 meeting of creditors was scheduled for May 25, 2016, and the United States Trustee filed a Statement of Presumed Abuse (the "10-day statement") on June 6, 2016. This motion is filed within 30 days of the 10-day statement and is timely under 11 U.S.C. §704(b) and Federal Rule of Bankruptcy Procedure 9006 (as applicable).

## III. LAW AND ARGUMENT

### Requirements to Establish Special Circumstances

17. If the presumption of abuse arises, debtors may rebut it only by demonstrating special circumstances, such as a serious medical condition or a call or an order to active duty in the Armed Forces, and only to the extent such special circumstances justify additional expenses or adjustments to CMI for which there is no reasonable alternative. 11 U.S.C. § 707(b)(2)(B)(i).

18. Debtors must provide a detailed explanation of the special circumstances, itemize and document each additional expense or adjustment of income, and attest under oath to the accuracy of the information provided. 11 U.S.C. §§ 707(b)(2)(B)(ii) and (iii).

19. In the event debtors can establish special circumstances of the kind described in 11 U.S.C. § 707(b)(2)(B)(i), they can rebut the presumption of abuse only if they can demonstrate that the additional expenses or adjustments to income cause the product of their reduced monthly net income, when multiplied by 60, to be the lesser of; a) 25 percent of the nonpriority unsecured claims in the case, or $7,475, whichever is greater; or b) $12,475. 11 U.S.C. § 707(b)(2)(B)(iv)(I) and (II).

20. Therefore, if a debtor's monthly net income is $207.91 or more (at least $12,475 to fund a 60-month plan), as calculated by means test, the filing is presumed abusive.

21. The Debtor's means test reports a monthly disposable income of $83.27 on line 39c. The Debtor marked that the presumption of abuse does not arise.

22. The Debtor's means test includes $8,971 in gross monthly wages and $8,888.55 in expenses.

23. Among the Debtor's expenses are secured payments to Attorney Rocky L. Coe in the amount of $95 and Law of of [sic] Arthur Heitzer in the amount of $505.95. Schedule D does not disclose that the obligations owed to Coe and Heitzer are secured by the Debtor's home or any other collateral. Moreover, the Debtor on Schedule D attributes an $80,000 value to her

3

home, and a first mortgage of the home in the amount of $110,017, leaving any other claims unsecured.

24. The United States Trustee asserts that **$600.95** should be added back into the Debtor's means test for improperly claimed secured debt payments.

25. Next, the Debtor claims a $1,358 monthly expense for charity.

26. The Debtor's 2015 tax returns include only $920 in annual gifts to charity; the Debtor's 2014 tax returns include only $1,310 in annual gifts to charity.

27. Accordingly, it does not appear the Debtor actually has a **$1,358** monthly expense for Charity, and the amount should be added back into the means test. (Even if the Debtor's $150 charitable expense listed on Schedule I is added back in, the Debtor would have at least $1,200 in additional disposable income.)

28. The Debtor further appears to overstate her tax expense. The Debtor asserts $2,216 in monthly taxes; however, for 2015 the Debtor's tax expense was $11,341, or approximately $945 per month. The United States Trustee has not yet reviewed the Debtor's 2016 pay statements to verify the tax expense. Accordingly, the Debtor may have additional monthly disposable income.

### Abuse Under 11 U.S.C. § 707(b)(3)

29. In considering whether the granting of relief would be an abuse in a case in which the presumption of abuse does not arise or is rebutted, the court shall consider whether the debtor filed the petition in bad faith, or the totality of the circumstances of the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3)(A) and (B).

*Totality of the Circumstances, 11 U.S.C. § 707(b)(3)(b)*

*Law*

30. Whether a debtor has the ability to repay creditors under § 707(b)(3)(B) is a question of fact that requires a bankruptcy court to examine the debtor's actual income and expenses. *Ross–Tousey v. Neary (In re Ross–Tousey),* 549 F.3d 1148, 1162 (7th Cir.2008).

31. When a court determines whether a case is an abuse under the totality of the circumstances, it naturally considers all of the debtor's circumstances. For example, the court in *In re Zaporski*, 366 B.R. 758 (Bankr. E.D. Mich. 2007), stated that the plain language of subsection 11 U.S.C. § 707(b)(3)(B) required consideration of facts that are probative of a debtor's ability to repay his or her creditors. *Zaporski*, 366 B.R. at 771. The court went on to say one of the considerations is the debtor's ability to repay his creditors; the second consideration was whether the debtor enjoyed a stable source of income; and third, the court considered all of the debtor's financial circumstances under § 707(b)(3)(B), to include the debtor's future income and expenses, the value of his retirement accounts, and his liabilities.

32. The court in *In re Zaporski*, 366 B.R. at 770, cited the Sixth Circuit test as set forth in *In re Krohn,* 886 F.2d 123 (6th Cir.1989), as relevant in determining whether abuse exists:

> In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets.

33. The purpose of the BAPCPA, which added 11 U.S.C. § 707(b)(3)(B), was to eliminate perceived abuses of the bankruptcy system including the fact that "some bankruptcy debtors are able to repay a significant portion of their debts." H.R. Rep. No. 109-31 pt. 1, p. 3 (2005);

*see also Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 64 (discussing this problem in the context of § 707(b)(2)).

34. The Seventh Circuit agreed that "the repayment of creditors is among the purposes of BAPCPA." *In re Ross-Tousey*, 549 F. 3d 1148, 1161 (7th. Cir. 2008). In its decision, the Seventh Circuit stated that even in cases in which the presumption does not arise, the United States Trustee can seek dismissal under the totality of the circumstances and "take into consideration a debtor's actual income and expenses." *In re Ross-Tousey,* 549 F.3d at 1162 (citing *In re Zaporski* at 768).

*The Debtor's Financial Circumstances*

35. The Debtor's schedules demonstrate that she has the ability to repay some amount to her creditors if certain deductions are adjusted or removed.

36. Some of the Debtor's household expenses appear unreasonable, duplicative, or unnecessary. For example, the Debtor's schedule I includes a $225 cell phone, internet and cable bill; plus an additional $125 for cable and another $70 for internet – for a total expense of $420.

37. Additionally, the Debtor includes $300 in support payments for her mother. It is unclear why the Debtor is supporting her mother.

38. The tax withholding listed on Schedule I appears to be overstated. The United States Trustee's tax calculations, based on 2014 and 2015 tax returns, show the monthly tax withholding would be nearly half the amount listed.

39. The Debtor overwithheld her taxes in both 2014 and 2015, resulting in significant tax refunds -- $1,977 and $3,432, respectively. Tax refunds, which are the result of over-withholding, constitute disposable income for purposes of the § 707(b)(3) financial circumstances test. *In re Kehl,* 463 B.R. 19, 23 (Bankr. E.D. Mich. 2011); *In re Jacob,* 447 B.R. 535, 543–44 (Bankr. N.D. Ohio 2010).

40. There are a number of other factors that demonstrate that the totality of the Debtor's financial circumstances weigh in favor of dismissal:

    a. There is no indication that the filing of the bankruptcy was precipitated by a calamity or health issue, and the unsecured debt appears to be almost all student loans;

    b. The Debtor has a household of two and reports a projected combined gross annual income of approximately $107,661. The median income for a household of two is $59,668; and

    c. The Debtor has been employed as a teacher with Milwaukee Public Schools for 22 years.

41. In sum, dismissal for abuse is appropriate under the presumption of abuse and is appropriate under the totality of the financial circumstances based on the Debtor's bankruptcy schedules and case law.

WHEREFORE, the United States Trustee prays that the Court dismiss this case based on the presumption of abuse and the totality of the circumstances pursuant to 11 U.S.C. §§ 707(b)(2) and (b)(3).

DATED: July 5, 2016.

Respectfully submitted,

PATRICK S. LAYNG
United States Trustee

LAURA D. STEELE
Attorney for the United States Trustee